DENNIS, CIRCUIT JUDGE
concurring in granting the Bank’s petition for panel rehearing, and dissenting from denial of the Congo’s petition for rehearing:
I.
I commend the majority opinion for recognizing that we interpret statutes according to their “plain meaning” and turning to the dictionary to determine what that meaning is for the words “used for” in FSIA § 1610(a)(1). Unfortunately the majority chooses to ignore those parts of the definition which do not support its overly-narrow construction of the term.
As the majority itself correctly notes, “used for” can mean “utilize.” What the majority omits to mention is that “used for” also means “to put into action or service: have recourse to or enjoyment of: EMPLOY.” Webster’s Third Neiv International Dictionary 2253 (Philip B. Gove ed., 3rd ed. 1993). See also Black’s Law Dictionary 1540 (Bryan A. Gardner, ed., 7th ed. 1999) (“[t]he application or employment of something”); Merriam-Webster’s Collegiate Dictionary 1301 (Frederick C. Mish ed., 10th ed. 1993) (“avail oneself of: EMPLOY ... to expend or consume by putting to use”). Thus property is “used for commercial activity” if it is employed in, applied in the service of, or utilized for commercial activity.
The majority not only uses an improperly truncated and cramped meaning of “use”, it also mischaracterizes the assets at issue in this case which the Bank seeks to attach. In order to make its argument work, the majority incorrectly describes Congo’s royalty interest as “revenue” or “income,” i.e., as the results or fruits of the Congo’s right to receive royalties rather than the property right itself. On the contrary, however, a landowner royalty interest is an intangible property interest *266 entitling its owner to a share of production, in kind or cash, if, as and when there is production, free of the costs of production. See 8 Howard R. Williams & Charles J. Meyer, Oil and Gas Law 952 (2001). See also Jensen v. Wilkinson, 133 S.W.2d 982, 984 (Tex.Civ.App.1939)(“... the usual and customary way for a land-owner to realize on the value of his land for oil is to get it leased, retaining royalty rights, and through such royalty rights to share in the profits which it is hoped will issue from his land in the form of oil production, or to sell such royalty rights or portions thereof to others.”); 30 La.Rev.Stat. Ann. § 80 (“A mineral royalty is the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another. Unless expressly qualified by the parties, a royalty is a right to share in gross production free of mining or drilling and production costs.”); John S. Lowe, Oil and Gas Law in a Nutshell 43 (1995) (“A landowner’s royalty ... is the interest in production retained by the lessor in the royalty clause of the oil and gas lease.”).
A simple analogy helps here. The relationship between a royalty interest and the proceeds from that interest is the same as between shares of stock and dividends owed as a consequence of ownership of shares. Just as a share of stock has existence and value separate from dividends, landowner royalty interest has existence and value as a property interest separate from the payments owed on that interest. See Jensen, 133 S.W.2d at 984 (explaining that value to royalty interest prior to oil production comes from “belief that the working interest, which is created by the same-self lease that creates the royalty rights, will be developed and operated”). And while the majority may reasonably think that it would be strange to describe revenue as “used for” the enterprise that created it, it is certainly normal usage to consider shares of stock or royalty interest as “used for” the commercial activity which ultimately generates production and revenue.
The majority thus ignores both the ordinary meaning of “use” and misconceives the nature of the property interest involved here, to arrive at the conclusion that Bank has failed make a showing that the royalty interest is “used for” commercial activity. For these reasons I believe that the majority’s analysis is incorrect.
I would reverse the district court’s grant of summary judgment, and remand for further proceedings in light of the precepts discussed in my separate opinions.
II.
In denying the Congo’s request for an opinion on the situs of the royalty obligations the majority writes, “[t]he factual question of what the royalty and tax obligations are ‘used for’ appears much less difficult on this record than the legal question of determining the situs of the intangible royalty obligations.”
I cannot comprehend why the difficulty of the situs question allows this court to shirk its duty in guiding the district court on a complex legal determination it may have to make. Such a conclusion is justifiable only by assuming that it is inevitable that the district court will find that the royalty interest is not “used for” commercial activity. If the majority sub silentio has already reached this decision, it should forthrightly declare the reasons for its conclusion. Although I likely would disagree with the reasons, they may reveal that the case should not be remanded or provide helpful guidance to the district court if it is remanded.
Upon further research I think that the situs question is one which deserves more *267 attention, and one upon which the district court may need more guidance in answering. Accordingly, I would grant the Congo’s petition for rehearing for the purpose of clarifying and setting forth the legal principles controlling the situs determination.